J-S24028-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| TARA COMAN, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| CHARLES COMAN, JR. | |
| Appellee | No. 2869 EDA 2014 |

Appeal from the Order entered September 12, 2014,
in the Court of Common Pleas of Monroe County,
Domestic Relations, at No(s): 1211 DR 2013, 9842 CV 2013

BEFORE:  GANTMAN, P.J., ALLEN, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED APRIL 08, 2015**

Appellant, Tara Coman, ("Mother"), appeals from the trial court's order denying her petition to enforce a post-nuptial agreement as it relates to the child support obligation of Appellee, Charles Coman, ("Father").  We affirm.

Mother and Father were divorced on May 1, 2014, and are the parents of two minor children.  On May 19, 2014, Mother filed a petition to enforce the post-nuptial agreement executed by the parties on November 8, 2013. The agreement specified that it was "incorporated into any divorce decree … but it shall not be merged with such decree."  Post-Nuptial Agreement, 11/8/13, at 2.  The objective of Mother's petition was to enforce/increase the amount of Father's monthly child support obligation from $697 (which Father paid pursuant to a December 31, 2013 domestic relations order issued after Mother filed for child support on November 5, 2013) to $1,100

(which Father agreed to pay in the November 8, 2013 post-nuptial agreement). Mother had also filed to modify child support on March 24, 2014. A conference was held on April 29, 2014, after which Mother's modification action was dismissed and the prior order for $697 monthly child support remained in effect.

The trial court convened a hearing on Mother's May 19, 2014 petition to enforce the post-nuptial agreement on August 21, 2014. On September 12, 2014, it entered its order denying Mother's petition for enforcement of post-nuptial agreement. Mother filed a timely appeal on September 30, 2014, and the trial court and Mother have complied with Pa.R.A.P. 1925.

Mother presents two issues for our review:

I.    WHETHER THE TRIAL COURT ERRED AND ABUSED ITS
      DISCRETION IN RULING [MOTHER] WAIVED HER RIGHT
      TO SEEK ENFORCEMENT OF A POST-NUPTIAL AGREEMENT,
      WHERE THE EVIDENCE DEMONSTRATED AN ENFORCEABLE
      POST-NUPTIAL AGREEMENT EXISTED AND THAT SAID
      AGREEMENT PRECLUDED WAIVER OR MODIFICATION,
      EXCEPT BY A WRITTEN INSTRUMENT SIGNED BY BOTH
      PARTIES?

II.   WHETHER THE TRIAL COURT ERRED AND ABUSED ITS
      DISCRETION BY DENYING [MOTHER'S] PETITION TO
      ENFORCE A PROPERLY EXECUTED POST-NUPTIAL
      AGREEMENT, WHICH DENIAL HAD THE EFFECT OF
      ORDERING A DOWNWARD MODIFICATION OF THE CHILD
      SUPPORT PROVISION OF THE AGREEMENT WHERE THERE
      WAS NO PETITION FOR MODIFICATION BEFORE THE
      COURT AND THE EVIDENCE DEMONSTRATED NO CHANGE
      IN CIRCUMSTANCES HAD OCCURRED?

Mother's Brief at 4.

> [Our] scope of review in a support matter focuses upon whether the lower court abused its discretion. *Ashbaugh v. Ashbaugh,* 426 Pa.Super. 589, 627 A.2d 1210 (1993). An abuse of discretion is "[n]ot merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record, discretion is abused." *Id.* (citation omitted).

***Boullianne v. Russo***, 819 A.2d 577 (Pa. Super. 2003).

Here, we discern no abuse of discretion by the trial court. In framing her two issues, Mother disregards the overarching nature of the law and policy applicable to agreements between parents vis-à-vis child support. 23 Pa.C.S.A. § 3105 provides:

> **Effect of agreement between parties**
>
> (b) Certain provisions subject to modification.--A provision of an agreement regarding child support, visitation or custody shall be subject to modification by the court upon a showing of changed circumstances.

Section 3105 permits the modification of a child support agreement. ***Boullianne v. Russo***, 819 A.2d at 580. "In [a] support action,... the payee may not claim that the [agreement] prevents the family court from modifying the order downward if such reduction is necessary to prevent the payor from having to comply with an order that he cannot pay due to changed circumstances." ***Id***.

We recently explained:

> [M]arital settlement agreements that are merged into a divorce decree are treated differently than agreements that are incorporated into the divorce decree. *See Jones v. Jones,* 438

- 3 -

Pa.Super. 26, 651 A.2d 157, 158 (1994) (holding that an agreement that merges into the divorce decree is enforceable as a court order, but an agreement incorporated into the decree "survives as an enforceable contract [and] is governed by the law of contracts"). ***However, this distinction does not apply to the provisions of such agreements that concern matters of child support*** or custody. ***The Divorce Code specifically provides that regardless of whether an agreement between parties is merged or incorporated into the divorce decree, "[a] provision of an agreement regarding child support,*** visitation or custody ***shall be subject to modification by the court upon a showing of changed circumstances."*** 23 Pa.C.S.A. § 3105(b); *see also McClain,* 872 A.2d at 862–63. The Pennsylvania Supreme Court explained the policy behind this statute when it explained that "[p]arties to a divorce action may bargain between themselves and structure their agreement as best serves their interests. They have no power, however, to bargain away the rights of their children[.]" *Knorr v. Knorr,* 527 Pa. 83, 588 A.2d 503, 505 (1991). Thus, regardless of the fact that the parties' PSA was incorporated into their divorce decree, the trial court had jurisdiction to modify the provision addressing Father's child support obligation.

***Morgan v. Morgan***, 99 A.3d 554, 557 (Pa. Super. 2014) (emphasis added).

Moreover, with regard to modification – which Mother pursued in her unsuccessful March 24, 2014 action – the Rules of Civil Procedure provide:

**Pursuant to a petition for modification, the trier of fact may modify or terminate the existing support order in any appropriate manner based upon the evidence presented *without regard to which party filed the petition for modification*.** If the trier of fact finds that there has been a material and substantial change in circumstances, the order may be increased or decreased depending upon the respective incomes of the parties, consistent with the support guidelines and existing law, and each party's custodial time with the child at the time the modification petition is heard.

Pa.R.C.P. 1910.19(c) (emphasis added).

- 4 -

Here, the trial court expanded on our Commonwealth's policy of fundamental fairness – to parents as well as children – and commented:

> Initially, we note that a parent cannot bargain away the child's right to support. Although the majority of the case law in this respect discusses the situation where a party agrees to less child support than they may be entitled, we believe the reverse is also true. Instantly, [Mother] chose to first proceed with a domestic relations support conference instead of seeking redress with the Court. "The support guidelines are to be considered both in entering the original support order, and in entering a modified order." *Shutter v. Reilly*, 539 A.2d 424, 426 (Pa. Super. 1988).

Trial Court Opinion, 11/12/14, at 2 (unnumbered and one citation omitted).

Mother and Father were the only witnesses to testify at the August 21, 2014 hearing on Mother's petition to enforce post-nuptial agreement. Mother testified to filing for child support on November 5, 2013, and stated with regard to the corresponding December 17, 2013 support conference, "I thought they would go by the post-nup agreement when I went in there." N.T., 8/21/14, at 14-15. She repeated, "I tried to go with the post-nup agreement, and they didn't go with it." *Id*. at 16. Mother testified, "they told me they'd go by [Father's] income." *Id*. As a result, Father was ordered on December 31, 2013 to pay child support of $697 per month.

Mother explained that she then filed to modify child support on March 24, 2014 because she "put the children in day care." *Id*. at 24. Mother testified, however, that she "didn't actually have day care" because she was "off from work." *Id*. at 25. At the conference held on April 29, 2014, Father

- 5 -

provided his 2013 tax return, and Mother's petition was dismissed, with Father's $697 monthly child support obligation remaining in effect. *Id*.

Similarly, Father testified that he provided his 2013 tax return at the April, 2014 support conference, and the amount of his support obligation was not changed from the $697 monthly support ordered on December 31, 2013. *Id*. at 31. He explained that the conference officer reviewed his tax return, and "it was pretty much accurate based on the information I brought the first time, so nothing changed." *Id*. Father testified that the $697 monthly support amount was based originally on his "QuickBooks reporting" at the December 2013 conference. *Id*. at 32. Father explained that he "actually just got caught up" on his $697 monthly child support obligation, but "would not be able to" pay $1,100 monthly child support. *Id*. at 33-34.

Given the foregoing legal authority and facts of record, we find no abuse of discretion by the trial court in denying Mother's petition to enforce post-nuptial agreement as it pertains to Father's child support obligation.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/2015